## ARNOLD PECK *v.* MILFORD HUNT HOMEOWNERS ASSOCIATION, INC.
### (AC 28896)

DiPentima, McLachlan and Peters, Js.

Argued May 23—officially released September 2, 2008

*Ronald J. Barba,* for the appellant (defendant).

*James M. Nugent,* for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. The defendant, the Milford Hunt Homeowners Association, Inc., appeals from the judgment of the trial court, rendered after a trial to the court, resolving a dispute over a billboard lease in favor of the plaintiff, Arnold Peck. The defendant claims that the court (1) failed to apply the provisions of General Statutes § 47-247[1] properly so as to allow the termination of the lease and (2) improperly concluded that the lease was not unconscionable or commercially unreasonable. We conclude that the provisions of § 47-247 do not apply under the circumstances of this case and affirm the judgment of the trial court.[2]

---

[1] General Statutes § 47-247 (a) provides: "Except in the case of nonresidential common interest communities as provided in section 47-215, if entered into before the executive board elected by the unit owners pursuant to subsection (f) of section 47-245 takes office, (1) any management contract, employment contract or lease of recreational or parking areas or facilities, (2) any other contract or lease between the association and a declarant or an affiliate of a declarant, or (3) any contract or lease that is not bona fide or was unconscionable or commercially unreasonable to the unit owners at the time entered into under the circumstances then prevailing, may be terminated without penalty by the association at any time after the executive board elected by the unit owners pursuant to subsection (f) of section 47-245 takes office on not less than ninety days' notice to the other party."

[2] Although the court determined that the defendant properly could challenge the billboard lease pursuant to § 47-247, it rendered judgment in favor of the plaintiff because it found that the lease was not unconscionable. We

The relevant facts are undisputed. On March 2, 1999, Riverview Chase Associates sold a parcel of land in Milford to T & M Homes, LLC. The plaintiff signed the deed conveying title on behalf of Areck Investments, LLC, one of the partners in Riverview Chase Associates. On the same day, T & M Homes, LLC, and the plaintiff entered into a lease agreement for a portion of the conveyed premises permitting the erection and maintenance of a billboard. The lease was for a term of ninety-eight years at a rental fee of $1 per year and provided easements for access to and maintenance of the sign. The lease was recorded in the Milford land records.

On December 2, 1999, T & M Homes, LLC, recorded a declaration in the land records pursuant to the Common Interest Ownership Act (act), General Statutes § 47-200 et seq., creating Milford Hunt, a planned community consisting of sixty-two residential lots. The legal description of the development, which was attached as a schedule to the declaration, listed encumbrances on the property that included the billboard lease.

By warranty deed recorded on August 2, 2004, T & M Homes, LLC, conveyed the open space areas and the roads in Milford Hunt, which included the land encumbered by the billboard lease, to the defendant unit owners' association organized under General Statutes § 47-243 of the act.[3] On January 20, 2005, the defendant's board of directors adopted a resolution

conclude, however, that the provisions of § 47-247 do not apply under the circumstances of this case and, for that reason, do not reach the issue of unconscionability. Therefore, the court's decision is correct but not for the reasons stated. We are "not required to reverse a ruling of the trial court which reached a correct result, albeit for a wrong reason." (Internal quotation marks omitted.) *Flagg Energy Development Corp.* v. *General Motors Corp.*, 244 Conn. 126, 151, 709 A.2d 1075 (1998).

[3] General Statutes § 47-243 provides: "A unit owners' association shall be organized no later than the date the first unit in the common interest community is conveyed. The membership of the association at all times shall consist exclusively of all unit owners or, following termination of the common interest community, of all former unit owners entitled to distributions of proceeds under section 47-237 or their heirs, successors or assigns. The

terminating the lease between T & M Homes, LLC, and the plaintiff for the billboard on the defendant's property. A copy of the resolution and a notice of termination was mailed to the plaintiff, advising him of the termination of the lease and the related easements pursuant to § 47-247. The plaintiff then commenced the present action, seeking an injunction and damages and a judgment quieting title to the leasehold interest in his favor. The defendant, in an amended counterclaim, sought a declaratory judgment that the lease had been terminated pursuant to § 47-247 or, in the alternative, that it was unconscionable and void as a matter of common law.[4]

The case was tried before the court on January 12, 2007. The parties filed simultaneous briefs on April 18, 2007, and the court issued its memorandum of decision on May 14, 2007. In that decision, the court first determined that the defendant had the right to challenge the billboard lease pursuant to § 47-247 (a) (3) and the common law. It concluded, however, that the lease was not unconscionable and, therefore, could not be terminated. Accordingly, it declared the lease and the easements to be valid[5] and found in favor of the plaintiff on the defendant's counterclaim.[6] This appeal followed.

---

association shall be organized as a profit or nonprofit corporation, trust, partnership or unincorporated association."

[4] On appeal, the defendant's arguments all are addressed to the statutory grounds for termination of an unconscionable or commercially unreasonable lease pursuant to § 47-247 (a) (3). No separate arguments have been made with respect to any other statutory or common-law grounds for termination.

[5] The court determined that the second count of the plaintiff's complaint, alleging tortious interference with contractual rights and business expectations, had been abandoned because the plaintiff failed to brief that claim in his posttrial brief. Further, the court declined to award the plaintiff damages, punitive damages or interest, as requested in his prayer for relief. The plaintiff did not file an appeal challenging those determinations.

[6] The defendant filed a motion to reargue on May 24, 2007, claiming, inter alia, that the court had failed to address its argument that the lease was commercially unreasonable. At the hearing on the defendant's motion held on June 11, 2007, the court stated that the lease was not commercially unreasonable.

The defendant claims that the court failed to apply the provisions of § 47-247 properly. Specifically, the defendant argues that § 47-247 (a) (3) clearly provides that a homeowners' association may terminate a lease if it is commercially unreasonable or unconscionable *as to the unit owners* when entered into under the prevailing circumstances. The defendant claims that the court, contrary to the statutory language, made its determination on the basis of whether the lease terms were commercially unreasonable or unconscionable as between T & M Homes, LLC, and the plaintiff. The plaintiff claims that the provisions of § 47-247 (a) (3) do not apply under the circumstances of this case.[7] We agree with the plaintiff.

Section 47-247 (a) (3) provides that any lease that was "unconscionable or commercially unreasonable to the unit owners at the time entered into under the circumstances then prevailing" may be terminated without penalty by the association, with notice of not less than ninety days to the other party at any time after the association's executive board takes office. The critical considerations in determining whether § 47-247 (a) (3) applies to the facts of this case include the recording

---

[7] In the plaintiff's counterstatement of issues, he also claims that the defendant "failed to appeal from the judgment rendered in favor of the plaintiff on [the complaint] or to brief these issues" and so the appeal is "defective or moot . . . ." Mootness implicates subject matter jurisdiction and would require dismissal of the appeal. See *Wiltzius* v. *Zoning Board of Appeals*, 106 Conn. App. 1, 10, 940 A.2d 892, cert. denied, 287 Conn. 906, 907, 950 A.2d 1283, 1284 (2008).

The plaintiff's claim is without merit. The appeal form indicates that the defendant appealed from "[t]he court's judgment after trial in favor of [the] plaintiff." It does not specify whether the appeal is from the judgment on the complaint, the counterclaim or both. We conclude, however, that the appeal was taken from both judgments. The court made the same decision with respect to the complaint and the counterclaim, namely, that the lease should not be terminated because it was not unconscionable. Moreover, even if the appeal is viewed as being taken from the judgment on the counterclaim only, this court's jurisdiction would not be affected because the issues in the complaint and the counterclaim are so intertwined.

dates of the billboard lease and the declaration of Milford Hunt, the relationship between the plaintiff and T & M Homes, LLC, and whether the billboard lease was unconscionable or unreasonable as to the unit owners at the time the lease was signed.

The billboard lease was signed on March 2, 1999, and was recorded on March 4, 1999.[8] The landlord was identified as T & M Homes, LLC, and the tenant was identified as the plaintiff. The court found that no credible evidence had been submitted to show that the parties were not of equal bargaining power, that they were not dealing at arm's length or that T & M Homes, LLC, was a sham entity controlled by the plaintiff; the defendant has not challenged those findings on appeal. The court also referenced the plaintiff's testimony that the lease arrangement was important to him and was factored into the sales price of the land to T & M Homes, LLC.[9]

T & M Homes, LLC, as declarant, signed and recorded the declaration creating Milford Hunt on December 2, 1999, almost nine months after the billboard lease was recorded. The legal description provided that the property was subject to various encumbrances, including the billboard lease. The defendant acquired title to the land on which the billboard is located by deed dated July

---

[8] The defendant admitted in its answer to the plaintiff's complaint that the billboard lease was recorded in the Milford land records pursuant to General Statutes § 47-19. Section 47-19 provides in relevant part: "No lease of any building, land or tenement, for life or for any term exceeding one year . . . shall be effectual against any persons other than the lessor and lessee and their respective heirs, successors, administrators and executors, unless it is in writing, executed, attested, acknowledged and recorded in the same manner as a deed of land . . . ."

[9] The plaintiff testified that he has a business in Milford and wanted to continue using the billboard for personal advertising and that he would have pursued other options if T & M Homes, LLC, had not agreed to the lease as part of the sales transaction.

26, 2004, and recorded in the land records on August 2, 2004.

Preliminarily, the act is a comprehensive legislative scheme that regulates all forms of common interest ownership. It addresses the creation, organization and management of common interest communities. See *Weldy* v. *Northbrook Condominium Assn., Inc.*, 279 Conn. 728, 735, 904 A.2d 188 (2006). In resolving the defendant's claim as to the termination of leases pursuant to § 47-247 (a) (3) of the act, we must interpret that provision and other provisions of the act to determine the applicability in the present case. Issues of statutory construction present questions of law, over which we exercise plenary review. *Benson* v. *Zoning Board of Appeals*, 89 Conn. App. 324, 329, 873 A.2d 1017 (2005).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 401–402, 920 A.2d 1000 (2007).

Although the defendant argues that the lease was unconscionable as to the unit owners when the plaintiff and T & M Homes, LLC, signed it on March 2, 1999, the

provisions of the act preclude such a conclusion. The relevant provisions of the act are as follows. General Statutes § 47-220 governs the creation of common interest communities and provides that a common interest community may be created "only by recording a declaration executed in the same manner as a deed . . . ." General Statutes § 47-220 (a). General Statutes § 47-202 (32) of the act defines a "unit owner" as "a declarant or other person who owns a unit . . . . In a condominium or planned community, the declarant is the owner of any unit created by the declaration. . . ." General Statutes § 47-207 provides: "The principles of law and equity, including the law of corporations and unincorporated associations, *the law of real property*, and the law relative to capacity to contract, principal and agent, eminent domain, estoppel, fraud, misrepresentation, duress, coercion, mistake, receivership, substantial performance, or other validating or invalidating cause supplement the provisions of this chapter, except to the extent inconsistent with this chapter." (Emphasis added.)

The provisions, when read together, clearly establish that a common interest community does not come into existence until the declaration is filed in the land records. Further, a unit and unit owners do not exist until the common interest community is created. Accordingly, in the present case, the lease between the plaintiff and T & M Homes, LLC, could not have been "unconscionable or commercially unreasonable to the unit owners at the time entered into under the circumstances then prevailing"; General Statutes § 47-247 (a) (3); because the lease was executed on March 2, 1999, nine months *before* Milford Hunt had been created. In other words, there were no unit owners on March 2, 1999. The defendant's argument that the lease was unconscionable because the defendant was not a party to the negotiations as to its terms likewise fails because

there was no unit owners' association in existence on March 2, 1999.

These facts, together with the previously referenced factual findings of the court, including, inter alia, that the lease transaction was not shown to be anything other than an arm's length transaction and that no evidence indicated that T & M Homes, LLC, was a sham entity controlled by the plaintiff, compel the conclusion that § 47-247 (a) (3) does not apply under the circumstances of this case.

To adopt the defendant's position, i.e., that a unit owners' association can terminate any contract or lease that it deems unfair to its interests,[10] even when executed and recorded in the land records prior to the creation of the common interest community, would be contrary to well established principles as to the priority of interests in recorded transactions. See General Statutes § 47-33b et seq., the Marketable Title Act. The plaintiff, prior to the creation of Milford Hunt, negotiated a ninety-eight year term billboard lease and recorded it in the land records to provide notice of that encumbrance to any party who thereafter acquired an interest in that portion of the property. After the plaintiff conveyed his property to T & M Homes, LLC, he had no control over the type of residential ownership that the developer would choose for the development. The fact that T & M Homes, LLC, decided to create a common interest community rather than a standard subdivision does not provide the defendant with an opportunity to deprive the plaintiff of his interest in that lease.

---

[10] The lease in the present case did not impose any obligations on the Milford Hunt unit owners. The plaintiff, as tenant, was required to maintain the leased premises, to pay for insurance coverage and utility costs, and to repair or replace the billboard if damaged. The defendant's primary objection was that the plaintiff paid only a rental fee of $1 per year when it could negotiate a much higher rent if the lease was terminated. The plaintiff testified that the lease payment and the sales price of the land were negotiated together.